1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6                          SAN JOSE DIVISION

7

8    KENTAYA LARESA JENKINS,                Case No.  19-cv-02094-VKD

               Plaintiff,
9
                                            **ORDER RE CROSS-MOTIONS FOR**
10        v.                                **SUMMARY JUDGMENT**

11   ANDREW M. SAUL,                        Re: Dkt. Nos. 22, 24

               Defendant.
12

13

14        Plaintiff Kentaya Jenkins appeals a final decision of the Commissioner of Social Security

15   ("Commissioner")[1] denying her application for disability insurance benefits and supplemental

16   security income ("SSI") under Titles II and Title XVI of the Social Security Act ("Act"), 42

17   U.S.C. §§ 423, 1381, *et seq*.  Ms. Jenkins claims that the administrative law judge ("ALJ") erred

18   in two respects.  First, she contends that the ALJ failed to provide sufficient reasons for partially

19   discounting her allegations and testimony regarding the severity and limiting effects of her

20   impairments.  Second, Ms. Jenkins claims that the ALJ did not provide sufficient reasons for

21   giving little weight to the testimony of her mother, Theresa Jenkins, regarding Ms. Jenkins's

22   functional capacity.

23        The parties have filed cross-motions for summary judgment.[2]  The matter was submitted

24   without oral argument.  Upon consideration of the moving and responding papers and the relevant

25   evidence of record, for the reasons set forth below, the Court denies Ms. Jenkins's motion for

26

27   _____
     [1] Pursuant to Fed. R. Civ. P. 25(d), Andrew M. Saul is substituted for his predecessor, Nancy A.
     Berryhill.
28
     [2] The record indicates that Ms. Jenkins chose not to file a reply brief.

United States District Court
Northern District of California

summary judgment and grants the Commissioner's cross-motion for summary judgment.[3]

## I.       BACKGROUND

Ms. Jenkins was born in 1980 and previously worked as a warehouse worker.  On June 29, 2015, she had an acute myocardial infarction and underwent an angioplasty in which a stent was placed in her heart.  AR[4] 553-554.

On July 6, 2015, Ms. Jenkins applied for disability insurance benefits and SSI, alleging that she has been disabled since December 31, 2014 due to "[m]ental difficulties, heart surgery, high blood [sic], cholesterol, acid reflux [and] depression."  AR 263, 270, 342.  Her application was denied initially and on review.  An ALJ held a hearing and subsequently issued an unfavorable decision on March 29, 2018.  AR 21-29.

The ALJ found that Ms. Jenkins did not perform substantial gainful activity after the alleged onset date,[5] and that she has the following severe impairments:  status post acute myocardial infarction with placement of a stent, depressive disorder, and alcohol abuse disorder. AR 24.  However, the ALJ concluded that Ms. Jenkins does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations.  *Id.*  The ALJ determined that Ms. Jenkins has the physical residual functional capacity ("RFC") to perform a full range of medium work, as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c), involving no required interaction with the public. AR 27.  The ALJ found that Ms. Jenkins is able to perform past relevant work as a warehouse worker and that such work does not require the performance of activities precluded by Ms.

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 17, 18.

[4] "AR" refers to the certified administrative record lodged with the Court.  Dkt. No. 21.

[5] Noting that Ms. Jenkins was self-employed providing childcare after the date of her alleged disability onset date, the ALJ stated that he was unable to fully assess whether Ms. Jenkins's earnings constitute substantial gainful activity requiring a denial of benefits at step one of the sequential analysis.  Nevertheless, he ultimately concluded that it made no difference to the outcome and found that Ms. Jenkins did not perform substantial gainful activity after the alleged onset date, "but that her continued self-employment, and the detailed recordkeeping required to complete her 2015 tax returns in mid-2016, provides additional support for a finding that she has retained the ability to perform [substantial gainful activity]."  AR 24.

United States District Court
Northern District of California

1    Jenkins's RFC.  AR 28.  Accordingly, the ALJ concluded that Ms. Jenkins has not been disabled,

2    as defined by the Act, from December 31, 2014 through the date of his decision.  AR 29.

3        The Appeals Council denied Ms. Jenkins's request for review of the ALJ's decision.

4    AR 1-4.  Ms. Jenkins then filed the present action seeking judicial review of the decision denying

5    her application for benefits.

6    **II.  STANDARD OF REVIEW**

7        Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's

8    decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not

9    supported by substantial evidence or if it is based upon the application of improper legal

10   standards.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v.*

11   *Chater*, 60 F.3d 521, 523 (9th Cir. 1995).  In this context, the term "substantial evidence" means

12   "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a

13   reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523;

14   see also *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  When determining whether

15   substantial evidence exists to support the Commissioner's decision, the Court examines the

16   administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966

17   F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to

18   support more than one rational interpretation, the Court must defer to the decision of the

19   Commissioner.  *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

20        **A.  Ms. Jenkins's Allegations and Testimony**

21        Ms. Jenkins testified that she is unable to work due to her "heart condition" and "mental

22   state," noting that she is still taking medication and "dealing with depression and anxiety."  AR

23   65.  Ms. Jenkins further stated that she has "dealt with a bunch of tragedy" and is "scared to sleep

24   at night."  AR 66.  In a function report, Ms. Jenkins stated that her medications cause headaches

25   and make her sleepy.  AR 368.  She further noted that she takes care of her children and takes

26   them to school; that she can walk 3-4 blocks before she needs to rest; that she walks slowly; and

27   that it takes her 1-4 hours to do the cleaning, laundry, ironing and cooking because she "get[s]

28   tired a lot and weakness."  AR 368-372.  She also noted a fear of "having another heart attack and

United States District Court
Northern District of California

1    dying."  AR 373.

2         As noted above, the ALJ found that Ms. Jenkins has the following severe medically

3    determinable impairments:  status post acute myocardial infarction with placement of a stent,

4    depressive disorder, and alcohol abuse disorder.  AR 24.  While he noted that these conditions

5    could reasonably be expected to produce Ms. Jenkins's alleged symptoms, the ALJ concluded that

6    Ms. Jenkins's statements concerning the intensity, persistence, and limiting effects of those

7    symptoms are not entirely consistent with the evidence as a whole.  AR 27.  Ms. Jenkins contends

8    that the ALJ failed to provide specific clear and convincing reasons, supported by substantial

9    evidence, for partially discrediting her allegations and testimony.  Here, she seems to argue both

10   that the ALJ improperly relied solely on objective evidence, and that the ALJ failed to articulate

11   any basis at all to justify his assessment.  Dkt. No. 22 at 7, 9.

12        In evaluating a claimant's testimony regarding subjective symptoms, an ALJ must engage

13   in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the

14   ALJ must determine whether the claimant has presented objective medical evidence of an

15   underlying impairment which could reasonably be expected to produce the pain or other

16   symptoms alleged."  *Id*. at 1036 (internal citations and quotation marks omitted).  The claimant is

17   not required to show that his impairment "could reasonably be expected to cause the severity of

18   the symptom she has alleged; she need only show that it could reasonably have caused some

19   degree of the symptom."  *Id*. (internal quotation omitted).  "[O]nce the claimant produces

20   objective medical evidence of an underlying impairment, an adjudicator may not reject a

21   claimant's subjective complaints based solely on a lack of objective medical evidence to fully

22   corroborate the alleged severity . . . ."  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)

23   (internal citation omitted).  Unless there is affirmative evidence showing that the claimant is

24   malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms

25   only by offering specific, clear and convincing reasons for doing so.'"  *Tommasetti v. Astrue*, 533

26   F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir.

27   1996)).  "General findings are insufficient; rather, the ALJ must identify what testimony is not

28   credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821,

United States District Court
Northern District of California

4

1   834 (9th Cir. 1995).

2         Here, the ALJ made no finding of malingering and therefore was required to provide

3   specific, clear and convincing reasons for discounting Ms. Jenkins's statements regarding her

4   symptoms.  *Tommasetti*, 533 F.3d at 1039.  "Factors that an ALJ may consider in weighing a

5   claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between

6   testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek

7   treatment or follow a prescribed course of treatment."  *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir.

8   2007).  "Although lack of medical evidence cannot form the sole basis for discounting pain

9   testimony, it is a factor that the ALJ can consider in his credibility analysis."  *Burch v. Barnhart*,

10   400 F.3d 676, 681 (9th Cir. 2005).

11         Here, the ALJ discussed the evidence and explained the inconsistencies in the record that

12   he concluded at least partially discredits Ms. Jenkins's allegations and testimony regarding the

13   severity and limiting effects of her symptoms.  Moreover, the ALJ did provide reasoning based on

14   more than just the objective evidence of record.

15         With respect to her physical symptoms, the ALJ found that Ms. Jenkins's assertions are

16   inconsistent with the objective evidence, explaining that "although the evidence demonstrates a

17   myocardial infarction in June 2015, with some initial residual limitations, the record as a whole

18   shows that the claimant recovered significantly within months of this episode."  AR 27.  Ms.

19   Jenkins does not dispute that finding.  Indeed, with respect to her heart condition, the ALJ noted

20   that in a physical examination conducted approximately two months after her heart attack,

21   consultative examining physician Robert Tang, M.D. found no significant abnormalities and stated

22   that Ms. Jenkins's cardiovascular system showed "[r]egular rate and rhythm.  Normal S1 and S2.

23   No extra sounds or murmur are heard.  There is no edema."  AR 27, 568.  Additionally, the ALJ

24   correctly observed that in a cardiology consultative examination conducted by Dr. Rollington

25   Ferguson, M.D., F.A.C.C, F.A.C.P., a few months later in December 2015, Dr. Ferguson noted

26   that after an exercise treadmill test, Ms. Jenkins experienced dizziness upon exertion, but Dr.

27   Ferguson found no significant abnormalities and stated that Ms. Jenkins otherwise "demonstrated

28   normal heart rate response and normal blood pressure response and no ectopy."  AR 28, 623-24.

United States District Court
Northern District of California

The ALJ also cited a March 17, 2016 echocardiogram report showing a normal size left ventricle, with only mild increase in the thickness of the ventricle wall, as well as a December 1, 2017 chest x-ray showing normal heart size and mediastinum, "[n]o pneumothorax, infiltrates or effusions," "[n]o acute bony abnormality," and "[n]o acute cardiopulmonary findings."  AR 28, 656, 728.

With respect to Ms. Jenkins's mental condition, the ALJ acknowledged Ms. Jenkins's assertion that she was diagnosed with schizophrenia at age 15, and observed that the earliest mental health treatment records available are from September 2015 indicating major depression with psychotic features.  AR 25, 605-608.  An ALJ may consider whether a claimant's symptoms "change over a period of time (e.g., whether worsening, improving, or static)," as well as the "longitudinal record of any treatment and its success or failure, including any side effects of medication."  SSR 16-3p, 2017 WL 5180304, at *7; *see also Burch*, 400 F.3d at 681 ("The ALJ is permitted to consider lack of treatment in his credibility determination.").  In reviewing the available records, the ALJ correctly noted that within a few months of treatment with medication, a January 25, 2016 report indicates that Ms. Jenkins "denie[d] any depressed mood" and that "[h]er symptoms are well controlled now."  AR 25, 628-29.  While the ALJ acknowledged that Ms. Jenkins's treatment records from early 2017 indicate that she was experiencing several stressors (including her sister's death and caring for her children, her sister's children and her mother), the ALJ remarked that her records nonetheless indicate "a largely normal mental status examination," with good insight, judgment, concentration and attention.  AR 25, 699, 732.  Additionally, a December 2017 record indicates that Ms. Jenkins reported trouble sleeping and feeling depressed and tired, but denied difficulties in her ability to concentrate.  AR 25, 683, 685.

In concluding that Ms. Jenkins's symptoms were not as severe as alleged, the ALJ also considered the medical opinions of Drs. Tang and Ferguson, as well that of a third consultative examiner, Dr. Shephali Gupta, Psy.D, who conducted a mental status examination in September 2015.  AR 25-28; s*ee* 20 C.F.R. § 404.1529(c)(4), § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your

1   symptoms affect you."); *see also* SSR 16-3p, 2017 WL 5180304, at *6 ("Medical sources may

2   offer diagnoses, prognoses, and opinions as well as statements and medical reports about an

3   individual's history, treatment, responses to treatment, prior work record, efforts to work, daily

4   activities, and other information concerning the intensity, persistence, and limiting effects of an

5   individual's symptoms."). Each of the examiners' opinions regarding Ms. Jenkins's functional

6   capabilities corroborates the ALJ's finding that Ms. Jenkins's functional capabilities are not as

7   limited as she alleged.[6] Dr. Tang concluded that Ms. Jenkins can lift and carry up to 20 pounds

8   occasionally and 10 pounds frequently, with certain postural and environmental limitations. AR

9   569. Dr. Ferguson found that Ms. Jenkins would be able to lift and carry up to 50 pounds

10  occasionally and 20 pounds frequently; sit for up to eight hours, stand for up to six hours and walk

11  for up to four hours in an eight-hour workday, with the ability sit for eight hours and to sit and to

12  walk for up to two hours at one time without interruption. AR 626. Dr. Gupta concluded that Ms.

13  Jenkins has a mood disorder (not otherwise specified) and a Global Assessment of Functioning

14  score of 78, and found no limitation in Ms. Jenkins's work-related abilities, except for a mild

15  limitation in her ability to interact appropriately with others, noting that Ms. Jenkins "was tearful

16  (no tear production) twice during the session." AR 603.

17      Viewing the record as a whole, the Court finds that the ALJ provided specific clear and

18  convincing reasons for partially discrediting Ms. Jenkins's statements and testimony and that his

19  reasons are supported by substantial evidence. The Court finds no error here.

20      **B.    Lay Witness Statements**

21      At the administrative hearing, Ms. Jenkins's mother, Theresa Jenkins, testified that she

22  lives with Ms. Jenkins; that Ms. Jenkins helps with chores such as washing the dishes and cleaning

23  the bathroom; that Ms. Jenkins was depressed following her heart attack; and that Ms. Jenkins

24  drinks a six-pack of beer a day and spends her days locked in her room. Theresa Jenkins further

25  testified that she felt Ms. Jenkins's condition had gotten worse and that she would not be able to

26  obtain and maintain employment. AR 72-77. The ALJ gave "little weight" to Theresa Jenkins's

27

28  ───────────────
    [6] Ms. Jenkins does not challenge the ALJ's evaluation of these opinions.

United States District Court
Northern District of California

1    testimony, stating that her "observations are not consistent with the totality of the record and the

2    level of treatment that the claimant has accessed since the alleged onset date."  AR 28.  Ms.

3    Jenkins argues that the ALJ failed to provide germane reasons for rejecting her mother's

4    testimony.

5           "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's

6    ability to work is competent evidence that the ALJ must take into account."  *Molina v. Astrue*, 674

7    F.3d 1104, 1114 (9th Cir. 2012), *superseded by regulation on other grounds as stated in Sisk v.

8    Saul*, — F. Appx. —, 2020 WL 5412845, at *2 (9th Cir. Sept. 9, 2020).  "When an ALJ discounts

9    the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'"

10   *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (quoting *Dodrill v.

11   Shalala*, 12 F.3d 915, 919 (9th Cir.1993)).

12          Citing regulations concerning the evaluation of a claimant's symptom testimony, Ms.

13   Jenkins argues that the ALJ cannot rely solely on objective medical evidence in rejecting her

14   mother's testimony.  Additionally, Ms. Jenkins says that the ALJ failed to cite evidence indicating

15   that her "treatment was at a sub-standard level."  Dkt. No. 22 at 12.  However, "[i]nconsistency

16   with medical evidence" is a germane reason for discrediting the testimony of lay witnesses.

17   *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  As discussed above, the ALJ provided

18   sufficient reasons for rejecting Ms. Jenkins's allegations and testimony based on evidence

19   demonstrating that her symptoms improved over time, her failure to seek continuous mental health

20   treatment despite allegations of disabling mental conditions since age 15, and the opinions of the

21   consultative examiners regarding Ms. Jenkins's physical and mental functional capabilities.

22   Theresa Jenkins did not testify to any limitations beyond those described by Ms. Jenkins herself.

23   "In such a situation, the ALJ also gives germane reasons for rejecting other lay witness testimony

24   where it is found to be similar to claimant's."  *Bennet v. Colvin*, 202 F. Supp. 3d 1119, 1130-31

25   (N.D. Cal. 2016); *see also Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ

26   provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and

27   because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also

28   gave germane reasons for rejecting her testimony.").  The Court finds no error in the ALJ's

United States District Court
Northern District of California

1   decision to give little weight to Theresa Jenkins's testimony.

2   **III.**   **CONCLUSION**

3   Based on the foregoing, the Court denies Ms. Jenkins's motion for summary judgment and

4   grants the Commissioner's motion for summary judgment.  The Clerk shall enter judgment

5   accordingly and close this file.

6   **IT IS SO ORDERED.**

7   Dated: September 28, 2020

8

9   

10   VIRGINIA K. DEMARCHI
    United States Magistrate Judge

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28